UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| **CLYDE PIGGIE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 3:06 CV 523 JM |
| v. | ) |
| | ) |
| **MS. RIGGLE,** | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Clyde Piggie, a *pro se* prisoner, filed a complaint raising several constitutional due process claims. After screening under 28 U.S.C. § 1915A, he was allowed to proceed against a single defendant. Mr. Piggie alleges that, in retaliation against him for engaging in constitutionally protected activities, Ms. Riggle caused his transfer from Miami Correctional Facility ("MCF"), a medium security facility, to Pendleton Correctional Facility ("PCF"), a maximum security facility. Specifically, he maintains that she asked the Indiana Department of Corrections ("IDOC") to move him because he had filed grievances and lawsuits against the correctional facility's staff.

Ms. Riggle seeks summary judgment on three bases, that: (1) she merely initiated the reclassification and transfer process for legitimate reasons and was not the decision-maker; (2) she enjoys immunity from suit for seeking the

plaintiff's transfer; and (3) the plaintiff did not exhaust his administrative remedies. (Defendant's Motion for Summary Judgment, DE # 60 and Memorandum in Support of Motion for Summary Judgment, DE # 61). The motion for summary judgment is primarily supported by the declarations of Ms. Riggle (Declaration of Traci Riggle, DE # 60, Exhibit 2) and James Csenar, an IDOC classification analyst. (Declaration of James E. Csenar, DE # 61, Exhibit 4). Mr. Piggie submitted a response in opposition with his own declaration as well as other various exhibits. (Plaintiff's Response to Defendant's Summary Judgment, DE # 62, Exhibits 1-10). The defendant then filed a reply (Defendant's Reply in Support of Motion for Summary Judgment, DE # 64) to which Mr. Piggie responded. (Plaintiff's Reply to the Defendant's Reply, DE # 65 and Attachment 1).

## SUMMARY JUDGMENT STANDARDS

The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. *Outlaw v. Newkirk*, 259 F.3d 833, 836-837 (7th Cir. 2001).

> [T]he plain language of [FED. R. CIV. P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact,"

> since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986).

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, ___ U.S. ___, ___; 127 S. Ct. 1769, 1776 (2007) (citations, quotation marks, ellipsis omitted).

The First Amendment guarantees prisoners the right to petition for redress of grievances, and retaliation for filing a grievance or complaining about treatment by officials strikes at the heart of an inmate's Constitutional right to seek redress of grievances. *Sprouse v. Babcock*, 870 F.2d 450 (8th Cir. 1989). Prison officials may not retaliate against an inmate for exercising his First Amendment

3

rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). Whether a defendant acted in retaliation is a question of fact. *Ustrak v. Fairman*, 781 F.2d 573, 578 (7th Cir. 1986).

## BACKGROUND

Ms. Riggle admits that she sought Mr. Piggie's transfer. However, she contends that he was moved to PCF at the request of other staff "because of his overall negative adjustment, recent negative adjustment and failure to adjust," reasons different from those she cited in her request to transfer him. In her declaration Ms. Riggle attests that:

> . . . 14. On December 21, 2005, I requested that Clyde Piggie, DOC offender number 933044 be reclassified and transferred on state forms 3412 (report of classification) and 44355 ( report of transfer) due to his conduct history and subsequent addition of time added to his remaining time to serve at the DOC as a result of being found guilty of a conduct violation. Piggie was found guilty by the conduct board at MCF for intimidation of staff on December 21, 2005. The forms were submitted to the classification department and were approved by individuals within those departments. Additionally the facility transfer was approved by DOC central office.
>
> 15. On December 21, 2005, after receiving his latest conduct violation, offender Piggie scored, for purposes of classification, at a medium security level and had time added to his remaining term of incarceration. At the time, offenders with a certain amount of time remaining on their sentences were not eligible to stay at MCF's medium security level because the term for the remainder of his

4

> incarceration was now for more than ten years as a result of his being found guilty of a conduct violation.
>
> 16. Although I had recommend [sic] offender Piggie's transfer based upon his conduct history, the inter-facility transfer document ... shows that those who reviewed the matter after me noted that offender Piggie should be transferred because of his overall negative adjustment, recent negative adjustment, and failure to adjust . . .
>
> 18. Additionally, other staff sought reclassification of offender Piggie as a result of his conduct history which effected his assignment to certain activities and to housing. . .
>
> 20. I initiated a reclassification and transfer of offender Piggie due to his conduct history and its effect upon his security level assignment and not in retaliation for offender Piggies's requests for public records or the filing of complaints against me.

(DE # 60, Exhibit 2).

Although she knew that Mr. Piggie requested her personnel file, Ms. Riggle did not recall when she learned about it. (DE # 60, Exhibit 2 at ¶ 19).

In her declaration Ms. Riggle further explains that staff-initiated reclassification requests are submitted to the classification counselor and classification supervisor in the classification department on form 3412 while transfer requests are submitted on form 44355. (DE # 60, Exhibit 2 at ¶¶ 12-13). A 3412 form dated January 9, 2006, shows another staff member, H. Hammond, requested Mr. Piggie's reclassification based upon the December 21, 2005,

5

conduct violation; he did not ask for a transfer, however.* (DE # 60, Exhibit 3 at 2). In contrast, the recommendation section of the 3412 form dated December 21, 2005, that Ms. Riggle completed states: "Not eligible for medium security due to time restraint. Transfer to maximum security facility: 3-I-G-A-C ." She also apparently asked that Mr. Piggie be reclassified from a "3-H-G-A-C" to a "3-I-G-A-C" designation. (DE # 60, Exhibit 3 at 3). A . Siefert, a counselor in the classification department, approved H. Hammond's and Ms. Riggle's requests on January 11, 2006. That same day, A. Siefert signed a 44355 transfer form for a "disciplinary" transfer of Mr. Piggie "to maximum due to conduct history." The 44355 form notes only that the request for transfer is by the "offender," "facility" or "administrative." (DE # 60, Exhibit 3 at 6). Although her name does not appear on it, Ms. Riggle admits she submitted that 44355 transfer form. (DE # 60, Exhibit 2 ¶ 14).

At the next step, A. Siefert reviewed Ms. Riggle's request and recommended it. Again on January 11, 2006, a supervisor in the classification department, N. White, also recommended the transfer. Then, on January 12, 2006, James Csenar of the central office, approved it. In his declaration, Mr. Csenar states in part:

---

\* On January 12, 2006, H. Hammond signed a second 3412 form concerning a request for Mr. Piggie's "reclass/bedmove" to "PHU." (DE # 60, Exhibit 3 at 8).

> 5. My review of records indicates that in January 2006 I approved the transfer of Clyde Piggie, offender no. 933044, from Miami Correctional Facility ("MCF") to a maximum security facility due to MCF staff's assessment that offender Piggie's disruptive and negative behavior posed a threat to MCF 's security.

(DE # 60, Exhibit 4).

Six days later, on January 18, 2006, the actual move was set. (DE #60, Exhibit 3 at 9).

## DISCUSSION

Personal involvement is an element of every claim under 42 U.S.C. § 1983. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). A plaintiff must allege facts showing the defendant's participation or direct responsibility for the conditions of which he complains, *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996), by demonstrating a causal link between the defendant's conduct and the plaintiff's injury. *Benson v. Cady* , 761 F.2d 335, 339 (7th Cir. 1985). If there was a sufficient causal link between her actions and Mr. Piggie's transfer, the fact that Ms. Riggle was not the final arbiter of Mr. Piggie's transfer does not necessarily absolve her of responsibility.

The procedure outlined in Ms. Riggle's declaration requires staff to submit transfer requests to the classification department for review. This suggests that individuals in the classification department may not initiate a prisoner's transfer

7

and are limited to either approving or rejecting a transfer request from other staff or a prisoner. Correlatively, it seems that staff outside the classification department may only initiate a transfer request and cannot approve it. Because Ms. Riggle followed that procedure, she urges the court to find that she did not cause Mr. Piggie's transfer. On the surface this appears to be the case since she did not have actual authority to transfer Mr. Piggie. By submitting the 44355 form, however, she did all she could, formally, to effect the move.

As noted above, personal involvement or responsibility in the alleged deprivation is a necessary element for liability under 28 U.S.C. § 1983; it does not require direct participation, however. See *McCullah v. Gadert*, 344 F.3d 655, 660-61 (7th Cir. 2003) (holding a police officer who files a false report may be liable for false arrest if the report results in an unconstitutional seizure even if the reporting officer did not conduct the arrest); See also *Acevedo v. Canterbury*, 457 F. 3d 721, 723 (7th Cir. 2006) (same). The record tends to show that "but for" Ms. Riggle's submission of the 43555 form, Mr. Piggie would not have been transferred.

Furthermore, although a prisoner does not enjoy procedural due process protection against being transferred, substantive restraints do bar such action. If a staff person initiates a prisoner's transfer for a retaliatory or other improper

8

reason, that individual cannot escape responsibility simply by following IDOC procedure. The United States Court of Appeals for the Seventh Circuit has recognized "[t]he observance of procedural formalities cannot render valid an infringement upon inalienable constitutional rights." *Shango v. Jurich*, 681 F. 2d 1091, 1098 n. 13 (7th Cir. 1982).

Mr. Piggie charges there was a "conspiracy" and implies the individuals in the classification department who approved the transfer acted in concert with Ms. Riggle. (DE # 65, Attachment at 4). In his declaration he maintains:

> . . . 8. On 12-21-05 Defendant Riggle did transfered [sic] me to a higher security facility in retaliation when she initiated this transfer, and the other 2 staff has filed false reasons and done in retaliation to hurt me. . .

(DE # 62 at 2).

A conspiracy exists if there is "(1) an express or implied agreement among defendants to deprive plaintiff of his . . . constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F 2. 2d 437, 442 (7th Cir. 1988). Mr. Piggie is not proceeding on a conspiracy claim. There are no other defendants besides Ms. Riggle in this case. The involvement of more than one person in the transfer process does not show that a conspiracy existed. Nevertheless, the circumstances surrounding the decision to transfer Mr. Piggie raise the question of the extent to

which Ms. Riggle had any input in the transfer decision beyond submitting the 44355 form.

Three individuals recommended Mr. Piggie's transfer, Ms. Riggle, A. Siefert, and N. White. Seifert and White are classification department staff. To establish that her involvement in the transfer was limited, Ms. Riggle points out there is no evidence that she had contact with anyone in the classification department. (DE # 64 at 4).

The record does not reveal exactly how Ms. Riggle submitted the transfer form to the classification department.  But, it appears A. Siefert was the first person in that office to review it. Since A. Siefert approved both Ms. Riggle's 3412 and the 44355 forms on the same day, it is reasonable to infer at least the classification counselor knew Ms. Riggle requested Mr. Piggie's transfer. Whether A. Siebert divulged that information to anyone else in the classification department is unknown. Nevertheless, circumstances suggest that may have been the case.

Presumably, A. Siefert passed the 44355 form to N. White. Both of them signed it the day it was submitted. This transfer was not designated as an "emergency." Yet, it is difficult to imagine that it could have been processed through the IDOC bureaucracy much faster. Moreover, according to his declaration, Mr. Csenar did not independently evaluate whether to transfer Mr.

Piggie. Rather, he based that decision upon "MCF staff's assessment that offender Piggie's disruptive and negative behavior posed a threat to MCF's security." (DE # 60 Exhibit 4 ¶ 5). Although one of the rationales for transfer provided on the 44355 form is "threat to facility security," that box is not checked. It appears the 44355 form may not have been the exclusive source of information Mr. Csenar considered in determining whether to approve the transfer request. His admitted reliance upon the assessment of unidentified "MCF staff" begs the question of whether it included input from Ms. Riggle.

As another indication that the decision to transfer Mr. Piggie was separate from her actions, Ms. Riggle notes that while she used "conduct history" to justify the transfer request, A. Siefert and N. White set forth as their reasons "overall negative adjustment," "recent negative adjustment," and "failure to adjust." Besides the notation on the 44355 form that it was a disciplinary, administrative transfer request due to "conduct history," the basis for the classification department's determination that Mr. Piggie had not adjusted at MCF is not evident. A prisoner's adjustment, particularly that individual's negative adjustment, would encompass conduct history. Although the 44355 form lists various "rationales" for the requested action, "conduct history" is not among them.

11

Viewed in the light most favorable to Mr. Piggie, a rational fact-finder could determine that a transfer request based upon "overall negative adjustment," "recent negative adjustment," and "failure to adjust" is tantamount to a transfer request for "conduct history." It also stands to reason that the classification department would consult with the person who initiated the transfer request, if only to try to ensure the transfer was sought for appropriate reasons. Whether or not Ms. Riggle had direct, or indirect, contact with anyone in the classification department regarding her transfer request of Mr. Piggie, is a genuine issue of material fact.

Notwithstanding, a retaliation claim cannot prevail if the defendant can demonstrate that the same decision would have been made even without any consideration of the protected activity. *Mt. Healthy City School District v. Doyle*, 429 U.S. 274 (1977). According to Mr. Piggie, however, the non-retaliatory reasons asserted for his transfer are pretextual. In his declaration, Mr. Piggie denies that he was a disciplinary problem at MCF. During the twelve months he was housed there he attended school, worked in the kitchen and was a "C. A. B. clerk." He acknowledges that other MCF staff relied upon the 19 prior conduct violations in an earlier attempt to have him transferred from MCF. On July 1, 2005, Mr. Piggie maintains that his relocation was placed on "hold" while he challenged the conduct violations used to justify that transfer effort.

While Mr. Piggie acknowledges the length of time remaining on his sentence increased to more than ten years as a result of the December 21, 2005, conduct violation, he denies this made him ineligible to stay at MCF. Moreover, he denies a single conduct violation was a sufficient basis to transfer him to a higher security facility. (DE # 62).  Ms. Riggle acknowledges that she may have mistakenly believed this time restraint required his transfer. (DE # 64 at 4). That no other staff member initiated Mr. Piggie's transfer on account of the December 21, 2005, conduct violation, provides some  support for his claim that he would not have been transferred solely for that reason.  Mr. Piggie's contention that his transfer was stayed while he appealed the 19 prior conduct violations and that he would not have been transferred due to the single intimidation conduct violation, presents a genuine issue of material fact as to whether the asserted reasons for the transfer were pretextual.

Rarely is the fact of retaliation established with direct evidence of intent. See e.g. *Buise v Hudkins*, 584 F.2d 223 (7th Cir.1978). Most often, retaliation is proved through circumstantial evidence. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir.1987). Mr. Piggie indicates that on December 20, 2005, he directly informed Ms. Riggle that he had demanded a copy of her personnel file and had filed a lawsuit naming her husband as a defendant. (DE #65, Exhibit 2 at 4). In her declaration, Ms. Riggle only denies remembering when she learned he requested

her personnel file, but says nothing regarding the lawsuit. Based on the record, on December 21, 2005, the day after Mr. Piggie avers that he gave Ms. Riggle this information, she asked for his transfer. If she knew nothing about the lawsuit until then, the fact it began five months prior is irrelevant. While it seems unlikely that she did not know her husband was a named defendant in a lawsuit until Mr. Piggie told her, she does not deny that is the case. Consequently, Mr. Piggie's chronology of events is unrefuted.

Viewing the facts as a whole in the light most favorable to Mr. Piggie, a rational trier of fact could find that, as the casework manager whose responsibilities included maintaining the facility's security, Ms. Riggle's recommendation and submission of the 44355 form was a sufficient causal link to Mr. Piggie's transfer even if she did not formally effectuate it. A jury could also reasonably find that Mr. Piggie would not have been transferred, if Ms. Riggle had not submitted the 44355 form. Consequently, there is a genuine issue of material fact as to whether her doing so was a sufficient causal link to Mr. Piggie's transfer notwithstanding that the classification department ultimately approved it.

Ms. Riggle maintains that she is entitled to qualified immunity from suit for her role in Mr. Piggie's transfer. Qualified immunity protects from civil liability government officials performing discretionary functions. *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). The threshold question the Court must consider in ruling upon the qualified immunity issue is:

> Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . .
>
> . . . if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established.

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citation omitted).

Mr. Piggie expressly states that he was transferred in retaliation for exercising his First Amendment rights to seek redress for grievances. As noted above the federal courts have long recognized a prisoner's right to do so. Qualified immunity protects only the person who committed a Constitutional violation, but who could not have known that it was a Constitutional violation because no court in a controlling jurisdiction had clearly established the right in question. Under the circumstances, however, qualified immunity is not applicable here because Ms. Riggle has not made the requisite admissions to support a qualified immunity defense. See *Jones v Wilhelm*, 425 F. 3d 455, 462-464 (7th Cir. 2005)(deciding qualified immunity unavailable to police officer who admitted forcibly executing a validly issued search warrant despite knowing it was ambiguous). In contrast, Ms. Riggle unequivocally denies that she requested Mr. Piggie's transfer to retaliate against him. The qualified immunity defense

15

simply does not dispose of Mr. Piggie's retaliation claim. Since a prisoner's right to be free from retaliation was clearly established, summary judgment cannot be granted based on this argument.

Finally, the Ms. Riggle claims Mr. Piggie did not exhaust his administrative remedies as to the charge that his transfer was retaliatory. 42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Accordingly, this statute requires that Mr. Piggie utilize whatever administrative grievance system is available to him before he can file a lawsuit in federal court. *See Woodford v. Ngo*, ___ U.S.___; 126 S. Ct. 2378, 2382-83, 2386-87 (2006); *Kaba v. Stepp*, 458 F.3d 678, 683-84 (7th Cir. 2006); and *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). Failure to exhaust administrative remedies under §1997e(a) is an affirmative defense that must be pled and proved by the defendant. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999).

Again, relying upon James Csenar's declaration, Ms. Riggle argues that Mr. Piggie did not exhaust his administrative remedies because he did not appeal the transfer decision. The relevant segment of his declaration states:

>6. Offender Piggie could have appealed the decision to transfer within ten (10) days of receiving notification of the transfer to the DOC Director of Classification.
>
>7. My review of records fails to reveal any documents filed by offender Piggie appealing this decision.

(DE # 60, Exhibit 4).

>To rebut this claim Mr. Piggie's states:
>
>>I filed an [sic] appeal at MCF and it was denied. I filed an appeal to the D. O. C's central office classifications department and it was also denied. I also wrote the commissioner, David Donahue, therefore, I did exhaust all available administrative remedies.

(DE # 62, Exhibit 2 at 4).

He also provided the February 10, 2006, letter from the Legal Services Director responding to his letter to the commissioner. The defendant replied that Mr. Piggie's response was not in the proper format and that his exhibits were inadmissible because they were not authenticated. (DE # 64 at 4-5). Mr. Piggie's pithy response to this argument was: "Piggie wrote the DOC's commissioner and filed the classification appeal. . . Piggie can't tell which DOC staff to respond to his appeal. Nevertheless, DOC at the final step responded to it and chose to label it recent correspondence." (DE # 65, Exhibit 2 at 2-3). These averments create a genuine issue of material fact as to whether Mr. Piggie exhausted the available administrative remedies.

CONCLUSION

"Summary judgment is inappropriate when affidavits require credibility determinations," and "where the underlying issue is one of motivation, intent, or some other subjective fact." *Santiago v. Lane*, 894 F.2d 218, 224 (7th Cir.1990) (citing *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir. 1979). Genuine issues of material fact exist as to whether Ms. Riggle caused the transfer, if so, whether the alleged non-retaliatory reasons for requesting Mr. Piggie's transfer are pretextual, and whether Mr. Piggie exhausted the available administrative remedies.

For the foregoing reasons, the Court:

(1) **DENIES** the defendant's motion (DE # 60) for summary judgment; and

(2) **DENIES AS MOOT** the plaintiff's motion (DE # 66) for ruling.

**SO ORDERED.**

DATE: March 21, 2008

　　　　　　　　　　　　　　　　 s/ James T. Moody　　　　　　　
　　　　　　　　　　　　　　　　JUDGE JAMES T. MOODY
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT